**UNITED STATES ex rel. FOLTA v. PAUL.**

No. 3918.

District Court of Alaska. First Division. Juneau.

July 31, 1937.

G. W. Folta, of Juneau, for plaintiff.

Geo. B. Grigsby, of Juneau, for defendant.

ALEXANDER, District Judge.

This is a proceeding for disbarment instituted by the United States Attorney's office of this District, against the defendant, Wm. L. Paul.

The general charge against the defendant is that he (Wm. L. Paul) "has on divers occasions been guilty of willful deceit and willful misconduct in his professional and private capacity, greatly affecting his character, particularly as an attorney of this court, and rendering him unfit and unworthy to represent the public in his professional capacity or to take any part as an attorney in any judicial proceedings."

In support of this general charge eight specific charges of misconduct are alleged.

In view of the gravity of the charges, every opportunity was afforded the defendant by the court to explain and de-

fend them, but all such efforts on the part of the court were treated with indifference or contempt by the defendant, as the record shows.

This proceeding was instituted on June 16, 1936, and an order to show cause presented to the court requiring the defendant to appear within forty days after service upon him of the information containing the charges. The defendant being reported then out of town the time for appearance was enlarged by the court, of its own motion, to sixty days. Service was made upon the defendant personally at Juneau, Alaska, on July 13, 1936, by the United States Marshal.

On August 5, 1936, an amended information was filed against the defendant by the United States Attorney's office, and personally served on the defendant at Juneau, Alaska, on August 21st, 1936, by the United States Marshal. Thereafter a number of dilatory pleadings were filed. Not until December 24, 1936, was an answer filed by the defendant. Thereafter, on December 30, 1936, the United States Attorney's office moved for a judgment on the pleadings. This motion for judgment on the pleadings was denied, but the answer was so evasive and so lacking in particularity, and so generally unsatisfactory, that the court, on the oral motion of Mr. Folta, ordered the defendant to file an amended answer answering or explaining more fully and particularly the allegations of the information and the transactions alleged in the various counts thereof, and that he personally subscribe and verify the same within thirty days from the date of the said order. This order of the court the defendant ignored.

Thereupon the United States Attorney's office again moved for judgment on the pleadings, but this was again denied, the court stating its intention to afford the defendant every opportunity for explaining or defending against the charges on the merits.

On February 20, 1937, trial date was set for March 8, 1937. On February 27, 1937, the defendant filed what he labeled "Motion for Change of Venue", which, however,

is in substance an affidavit of prejudice against myself, and a request that another judge be called in, or that in lieu thereof, this cause be referred to a committee of the Bar, "under the procedure set forth in Section 710, Compiled Laws of Alaska, 1933." Upon the argument of this motion it was conceded that Section 710 of our Code had no application to this case and that a change of venue was out of the question because of the expense to all parties involved in removing the case to any other district for trial. To call in any of our other judges would likewise involve an enormous expense, as the court had already requested Judge Hellenthal of the Third Division, who was then in Juneau, to hear the case, and he had disqualified himself, making the nearest other judge available about a thousand miles distant, with travel conditions such that it would take him approximately a week to make the trip one way. In this situation, and after repeated statements that it had no desire to sit in the case, the court accepted the suggestion of the defendant that he appoint a committee of the local Bar to hear the charges, and the court then made an order of reference and appointed Hon. R. E. Robertson, Hon. A. W. Fox and Judge James Wickersham as such committee. Both Mr. Robertson and Judge Wickersham disqualified themselves as members of the committee and the Court immediately appointed in their stead Mr. Howard D. Stabler, former United States Attorney, and Mr. G. W. Nostrand, former Secretary of the Juneau Bar Association, who were accepted as agreeable to the defendant.

With Judge A. W. Fox as Chairman, the committee, as revised, heard the charges against the defendant, and have reported to the court that the charges made in Count 1, Count 2, Count 3, Count 4 and Count 5 of the information are true and fully sustained by the evidence.

At the hearing, and from the inception of these proceedings, the defendant has been represented by one of the ablest lawyers in the Territory, who has guarded his interests in every available way.

For some reason, best known to himself, the defendant failed to appear, and the only witness appearing in his behalf was his wife, who knew nothing about any of the charges, except one.

The charges made against the defendant were of the the most serious nature, and included in their character some of the most serious offenses known to our Penal Code.

The charge made in Paragraph 6 of the information is particularly grave. In that paragraph the charge is made that the defendant represented as attorney a large number of fishermen, laborers and others, and agreed to prosecute their claims of lien against the Wrangell Narrows Packing Company; that he accepted such employment and received, in settlement of their claims, some 2,000 cases of salmon, which he sold, and converted the entire proceeds to his own use, and has since failed, neglected and refused to account to any of his clients for any part of the monies so received.

The evidence conclusively shows that the defendant, as such attorney, secured possession of some 2,153 cases of salmon, of the reasonable value of $3,000 or more (the evidence indicates a probable value of two or three times that amount, as the lowest grade of salmon was then selling for about $4 per case, and up to $11 or $12 per case for the best grades); that the defendant shipped this salmon to Seattle in his own name and sold it and collected the proceeds and never paid or accounted to any of his clients for any part of the proceeds. In fact, the defendant himself admits by his answer, that "He represented as attorney a large number of laborers, fishermen and others whose names are set forth in said paragraph (Paragraph 6 of the information) and who claimed liens against certain property of the Wrangell Narrows Packing Company, for wages earned in connection with the preparation and canning of salmon, and for supplies and material furnished, and who had employed him, the said Wm. L. Paul, to enforce payment of their claims; and further admits that he obtained possession of approximately 2,000 cases of salmon, against which at the time of his so obtaining possession thereof certain of

said claimants had and claimed liens, and that he thereafter consigned the said salmon to himself at Seattle, Washington, and sold the same and received therefor approximately $3,000."

He further admits categorically that he has wholly failed to account for any part of the proceeds to any of his clients, but states, "That none of the persons mentioned in said paragraph six of said information had at the time of the shipment or sale of said salmon, or ever had, any valid liens against the same, except the following persons, to-wit: Eddie Williams, Charles Sheek, Topsy Dugaqua, Arthur Johnson and Charles Newton; that the lien of said Arthur Johnson is of doubtful validity; that none of the persons named in said paragraph six of said information, except the persons last above mentioned ever had or now have any valid claims to any part of the proceeds of the sale of said salmon, but notwithstanding the invalidity of their claims nevertheless said persons, or most of them, have continuously, since said sale, asserted and claimed, and are now asserting and claiming a right to share in the proceeds of said sale of said salmon; * * *" and categorically admits that he has never accounted for any of the monies collected by him, in this language, "That the said William L. Paul is now, and at all times has been, willing to account for the proceeds of the sale of said salmon so shipped and sold by him as hereinabove stated, to the persons lawfully entitled to share in the distribution of said proceeds."

This is indeed a novel defense, if it can be called such, to a charge as grave as this, especially coming after repeated demands made on him by his clients for their money, and after more than six years have elapsed. Here we have an admission by the defendant that he collected a large sum of money (variously estimated at $3,000 to $10,000) for a group of clients, and six years after it is collected, challenging the right of his own clients to the money collected for them by him, and setting up (inferentially) as a defense

that he was ready to account to his clients for the money admittedly due them, if he knew to whom to pay it.

But nothing whatever has been done by the defendant to justify him in even setting up such a pseudo defense. Even he concedes that some of his clients were entitled to some part of the money he collected, yet he admittedly paid none of them anything.

Again, he knew, or must have known, that if he wanted to account for this money and was honestly in doubt as to whom or which of his clients it belonged, or in what proportions, he could, at any time, have paid the money into the registry of the court and asked the court, by proper proceeding, to ascertain the rightful claimants of the money and make distribution for him. But he did not do this. He continued to keep his clients' money and even to challenge their rights to it until these charges of failing to account to them were filed against him, and then comes forward with the lame and empty excuse that he intended all the while to pay over the money if and when he found out who was entitled to it, but did not know who to pay it to.

Such an excuse may have had some merit in the beginning, but comes with poor grace after the lapse of more than six years.

His conduct in this case, besides showing a wanton disregard for the interests of his clients and of his duties and obligations as a lawyer and an officer of this court, is rendered even more reprehensible by the fact this his victims, for the most part, were Indians or natives, as we generally call them up here, and members of his own race, who looked to him with almost childish faith as one who could be implicitly trusted by them with their affairs; and their claims for the most part represented their entire season's (or year's) earnings.

His answers to some of the other charges made are almost as lame, and indicate a possible reason why he failed to appear to answer them in person.

The other charges I will not take time to discuss. It is sufficient to say that from a full and complete examination and consideration of the entire record the court feels that the defendant has had a fair and impartial hearing before the committee asked for and approved by him, who have heard the charges fully, honorably and courageously and have arrived at what the court considers right and proper conclusions; and the court hereby accepts and adopts the findings of the committee.

It is unnecessary to say anything about the ethics of such conduct as the defendant has been found guilty of, except that it is such as neither the courts nor the profession have ever tolerated and cannot tolerate and maintain their own self-respect or the respect and confidence of the public.

It is therefore the judgment of the court that the defendant be permanently disbarred from all future practice of law in the Territory of Alaska.

However, in view of the defendant's offer to properly account to his clients, and out of sympathy for him and his family,

It is further ordered, that the defendant may apply for reinstatement at any time within one year, upon making proper apologies and amends, and if and when he furnishes the court satisfactory proof that he has fully accounted for and paid to his clients the sums rightfully due them under these charges, with interest.

Findings and judgment may be prepared accordingly.